# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

GAIL GARNER and THE ESTATE OF ANGELO
PALERMO,

                                             Plaintiffs,           DECISION & ORDER

                      -vs-

                                                      10-CV-6345-CJS

DII INDUSTRIES, LLC, ASBESTOS PI, MARK
GLEASON and MARCELLENE MALOUF,

                                             Defendants.

---

## APPEARANCES

For Plaintiffs:                              Christina A. Agola, Esq.
                                             2100 First Federal Plaza
                                             28 East Main Street
                                             Rochester, NY 14614
                                             (585) 262-3320

For Defendants DII Industries LLC       Andrew L. Morrison, Esq.
Asbestos PI:                                K&L Gates LLP
                                             599 Lexington Avenue
                                             New York, NY 10022-6030
                                             (212) 536-3941

                                             Gregg S. McHugh, Esq.
                                             DII Industries, LLC Asbestos PI Trust
                                             7557 Rambler Road Suite 285
                                             Dallas, TX 75231
                                             (214) 271-0550

For Defendants Mark Gleason and        Andrew L. Morrison, Esq.
Marcellene Malouf:                        K&L Gates LLP
                                             599 Lexington Avenue
                                             New York, NY 10022-6030
                                             (212) 536-3941

## INTRODUCTION

**Siragusa, J.** This diversity asbestos litigation case is before the Court on Defendants' motions (Docket Nos. 3 & 11) to dismiss and Plaintiffs' cross-motion (Docket No. 11) to amend the complaint. For the reasons below, Defendants' applications are granted and Plaintiffs' are denied.

## BACKGROUND

Plaintiff filed her original complaint in this Court *pro se* in civil action No. 08-CV-6191 on April 25, 2008, alleging that Defendants were liable to her father's estate for his death caused by exposure to asbestos. On November 14, 2008, the Court, interpreting Plaintiff's response to Defendants' first motion to dismiss as a request to proceed *pro se* as the representative of her father's estate, denied the request. Plaintiff subsequently hired counsel, and on March 27, 2009, filed an amended complaint. On April 17, 2009, Defendants again moved to dismiss, primarily on the ground that Plaintiff's claim against them was barred by the statute of limitations.[1] The Court entered a Decision and Order dismissing the 2008 civil action for lack of jurisdiction. *Garner v. DII Indus., LLC*, No. 08-CV-6191, 2010 U.S. Dist. LEXIS 9583 (W.D.N.Y. Feb. 4, 2010).

Plaintiffs commenced the present action in New York State Supreme Court (Index No. 10-4342), Monroe County, on April 5, 2010. Defendants removed the action to this Court on June 28, 2010, and moved to dismiss the original complaint on July 2, 2010.

---

[1]This case was originally to be transferred to the Eastern District of Pennsylvania for inclusion in MDL No. 875. However, the Judicial Panel on Multidistrict Litigation, in an order filed on October 10, 2008, vacated the conditional transfer, finding that "[t]he issues [in this cas] appear largely case-specific, and we are therefore persuaded that the motion to vacate should be granted." (Docket No. 12.)

Plaintiffs filed what they captioned as a First Amended Complaint[2] on July 22, 2010, and Defendants filed a motion to dismiss the First Amended Complaint on August 4, 2010. Plaintiffs filed a motion to amend their First Amended Complaint on September 24, 2010.

Viewing the allegations in the First Amended Complaint as true, the following are the relevant facts for consideration of the present motion. The decedent, Angelo Palermo ("Palermo"), was a union insulation mason for twenty-nine years from 1937 through 1966 in the construction asbestos industry. He spray coated and handled asbestos-containing products while working for one or more of the Haliburton or Harbison-Walker entities or their predecessors at work sites in New York State. Palermo died on April 23, 1966, at the age of 51 years. His death certificate listed the immediate cause of death as acute liver failure due to "metastasis cancer due to primary stomach (place of origin)." (First Am. Compl. ¶ 20.) The doctor who signed the death certificate was a resident who, two and a half years later, became a plastic surgeon. Palermo's co-worker and friend, who is not named in the amended complaint, was diagnosed with mesothelioma, but does not state the date of the friend's diagnosis. (First Am. Compl. ¶ 23.)

In February 2000, Gail Garner ("Garner"), Palermo's daughter, filed a claim with the Manville Personal Injury Settlement Trust ("Manville Trust"). She requested[3] that Dr. William Beckett, a local occupational doctor, who specialized in pulmonary and toxic substance disease, evaluate Palermo's medical and work history and pictures of his digital clubbing. According to the First Amended Complaint, Dr. Beckett determined:

---

[2]The First Amended Complaint does not state the theory under which the amendment should have been allowed. The Court presumes Plaintiffs relied on Fed. R. Civ. P. 15(a)(1)(B).

[3]The date of her request is not plead in the First Amended Complaint.

> Peritoneal mesothelioma is a difficult diagnosis to distinguish from carcinoma metastatic to the abdominal cavity or primary to the stomach, and it seems quite possible that the patient's fatal malignancy could have been a diffuse malignant mesothelioma of the peritoneum rather than a primary from the stomach.... [P]atients with malignant mesothelioma can develop digital clubbing.

(*Id*. ¶ 26.) The Manville Trust did not accept Dr. Becketts' opinion as a diagnosis.

On February 14, 2002, Harbison-Walker, which had been acquired by DII Industries, LLC, in 1967, then spun off in July 1992, filed for bankruptcy. The Bankruptcy Court issued a temporary restraining order staying asbestos claims.[4]

On June 6, 2003, Plaintiffs allege that, "a tribunal of asbestos experts of the Extraordinary Claims Panel of the Manville Trust diagnosed Angelo Palermo posthumously, with mesothelioma. (First Am. Compl. ¶ 29.) On October 27, 2003, David Austern, president of the Manville Trust, confirmed the tribunal's determination[5] that Palermo's claim was a mesothelioma extraordinary claim and issued financial restitution. Four months after the Manville "diagnosis," Plaintiffs filed additional asbestos claims. (*Id*. ¶ 31.) Plaintiffs assert that,

---

[4]The First Amended Complaint confusingly discusses Haliburton and Dresser Industires, though those entities are not specifically tied to Harbison-Walker in the amended complaint. For example, it states, "a temporary restraining order was issued to Harbison-Walker, staying asbestos claims against Halliburton's Dresser Industries Inc and claims against all Halliburton units." (First Am. Compl. ¶ 28.) Earlier, it states, "Asbestos was used in products manufactured or sold by Harbison-Walker Refractories Company, which DII Industries, LLC acquired in 1967. In 1968, Dresser took over Harbison-Walker Refractories Company until transferred to another division of DII Industries, LLC. Harbison-Walker was spun-off by DII Industries, LLC in July 1992. In 1998, Halliburton purchased Dresser (Symington-Wayne is a subsidiary of Dresser). DII Industries continued to retain responsibility for all asbestos claims pending as of the date of the spin-off." (*Id*. ¶ 18.)

[5]Again, somewhat confusingly, Plaintiffs allege in one breath that the tribunal "diagnosed" Palermo, and in the next, that they "determined" Palermo' claim was a mesothelioma claim.

> Four Trusts, including Manville, Celotex, Eagle-Picher and H.K. Porter (Trustee Mark Gleason is also the Trustee of H.K. Porter Trust), confirmed Palermo's death an asbestos related "mesothelioma" using the same medical evidence and trust standards as the 011 Trust. On December 16, 2003, Halliburton filed their petitions as a prepackaged bankruptcy plan for Dresser Industries and other subsidiaries.

(*Id*. ¶ 32.)

On April 4, 2006, Plaintiffs filed a *pro se* asbestos personal injury liability claim with DII Industries, LLC PI Trust. Plaintiffs allege that Defendants, "denied the claim for compensation due to (1) insufficient medical diagnosis; (2) Statute of Limitation, 3 year requirement under New York's Statute for filing of a lawsuit upon diagnosis of an asbestos-related disease; (3) the requirements [sic], and the claim will not be reviewed as an Extraordinary Claim." (*Id*. ¶ 38.) Plaintiffs assert that their claim was timely pursuant to New York's toxic tort discovery statute of limitations. (*Id*. ¶ 44.)

## STANDARDS OF LAW

### *Motion to Dismiss*

A motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6). *Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803 (2d Cir. Jun. 14, 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

***New York Statute of Limitations***

The New York Civil Practice Law and Rules require that an "an action to recover damages for a personal injury" be commenced within three years. N.Y. C.P.L.R. § 214(5) (McKinney's 1986). The statute also addresses exposure to substances that caused the injury. In such case,

> the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure

to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

N.Y. C.P.L.R. § 214-c(2) (McKinney's 1986) ("Add, L 1986, ch 682, § 2, eff July 30, 1986, and applicable to all actions commenced or claims filed on or after July 30, 1986."). In *Whitney v. Quaker Chem. Corp.*, 90 N.Y.2d 845 (1997), the New York Court of Appeals stated that,

> In *Matter of New York County DES Litig.* (89 NY2d 506), we recently held that the three-year limitations period for bringing an action to recover for the latent effects of exposure to a toxic substance commences "when the injured party discovers the primary condition on which the claim is based" (*id*., at 509). We rejected the contention that the plaintiff must also discover that the injury has a nonbiological cause (*id*., at 514).

*Whitney*, 90 N.Y.2d at 847. The Court further held, in *Wetherill v. Eli Lilly & Co.* (*In re N.Y. County DES Litig.*), 89 N.Y.2d 506 (1997), that,

> It is apparent from this history that, in enacting a new "discovery" rule for the commencement of toxic torts, the Legislature had in mind only the discovery of the manifestations or symptoms of the latent disease that the harmful substance produced. The dichotomy in the case law that the Legislature intended to address was that between impact or exposure on the one hand and resulting infirmity on the other. Given that narrow focus, the only reasonable inference is that when the Legislature used the phrase "discovery of the injury" it meant discovery of the physical condition and not, as plaintiff argues, the more complex concept of discovery of both the condition and the nonorganic etiology of that condition.

*Wetherill*, 89 N.Y.2d at 514.

## ANALYSIS

In her response to Defendants' motions to dismiss, Plaintiff contends as follows::

> It is unreasonable to expect or require, as a matter of law, the ordinary wrongful death claimant to initiate and conduct the massive research necessary to prove the causal link between occupational exposure and

> resulting cancer; such research takes numerous years and vast resources. This may be particularly true in cases of occupational disease where information relevant to asbestos-related deaths sometimes is not available to claimants but is in the exclusive control of the defendant corporation. *See e.g.*, "Asbestos Litigation: The Dust Has Got to Settle," 7 Fordham Urb. L.J. 55, 80 (1978); 5B Lawyers' Medical Cyclopedia 38.51B (1972).

(Pl.s' Mem. of Law, Docket No. 16-1, at 11.) Defendants also cite to the Fordham article and quote extensively from it:

> *See* Jean A. O'Hare, Comment, Asbestos Litigation: The Dust Has Yet to Settle, 7 FORDHAM URB. L.J. 55, 59, 60, 66 (1978) ("About 1930, an increasing number of worker compensation claims prompted the asbestos industry to investigate the problem of asbestos exposure.… The study indicated that there was a health hazard associated with prolonged exposure to asbestos.… The study recommended better dust control, annual physical and radiological examination of workers, and an industry sponsored study of the effects of asbestos. [T]he recommendations were prepared at the invitation of the industry and were published in Public Health Reports in 1935.… A few years later, mesothelioma, a rare form of cancer known to cause only one in ten thousand deaths in the general population, was linked to either the mining or industrial use of asbestos.… The link between asbestos and lung cancer was first observed in 1935 and definitively established by 1955.… [T]here was medical knowledge in both England and the United States by 1968 which indicated asbestos was carcinogenic….") (citations omitted); *see also Abbaticchio v. Union Carbide Corp.*, 2001 N.Y. Slip Op. 40257(U), 2001 WL 1470370, at *11 (N.Y. Sup. Ct. Westchester County Oct. 10, 2001) ("[D]efendants maintain that the claim that there was not a sufficient body of technical, scientific and medical information to discover the causes of plaintiffs' injuries is contradicted by…publications produced by plaintiffs, well before the filing of the instant motion. This contention is borne out by a review of the evidence put forth by defendants in their opposition papers. For example,…plaintiffs served a set of supplemental responses to interrogatories…that identifies over 300 publications dating back as far as 1931 (the Publication List) which, plaintiffs assert therein, is evidence of the notice to the scientific community in general, and defendants in particular, regarding the links between the chemicals involved in this case and the injuries sustained by plaintiffs as a result of exposure to those chemicals.… The Publication List, which includes writings about numerous chemicals at issue in this litigation, is evidence that at the time that many of these plaintiffs were exposed to chemicals involved in this litigation, there was already existing a developing body of material concerning the potentially deleterious effects of such exposures.")

(Def.s' Mem. of Law, Docket No. 19, at 8 n.6.)

Defendants argue that, "Ignoring the plaintiffs' specious tolling argument, their contention that their claim accrued in February 2000 must be rejected…." (Def.s' Reply Mem. of Law at 5.) They contend that N.Y. C.P.L.R. section 214-c does not apply to Plaintiffs since their alleged discovery, in the year 2000, or Palermo's injury, occurred more than five years after Palermo's own discovery of his injury, and his daughter's knowledge of that discovery, in the year of his death: 1966. Further, they contend that even if section 214-c did apply, and the discovery of Palermo's injury did not take place until the year 2000, their failure to file suit until 2006, puts them beyond the five-year limitations period in N.Y. C.P.L.R. section 214-c(4). The Court agrees.

In light of the extensive publications, dating from the 1930s on, about a link between asbestos exposure and mesothelioma, the Court rejects Plaintiff's argument that, "at the time of Palermo's death, the state of medical or scientific knowledge was such that the causation of Palermo's injury could not have been identified at the time of his death." (Pl.s' Mem. of Law, at 3.) Nothing raised by Plaintiffs shows that at the time of his death, they could not possibly have known that a potential claim for asbestos exposure existed. Since any amendment would be futile, there is no basis for granting Plaintiffs' motion. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## CONCLUSION

For the foregoing reasons, Defendants motions (Docket Nos. 3 & 11) are granted, Plaintiffs' motion (Docket No. 17) is denied and this case is dismissed. The Clerk is directed to enter judgment for Defendants and close the case.

IT IS SO ORDERED.

Dated: February 14, 2011
Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge